## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25-cr-0098 (JRT/JFD) |
| Plaintiff, | |
| v. | **REPORT AND** |
| | **RECOMMENDATION** |
| ALEJANDRO ROJAS GARCIA, | |
| Defendant. | |

This matter is before the Court on Alejandro Rojas Garcia's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. No. 30). Mr. Garcia is charged with one count of Attempted Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2; and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4) and 2252(b). Through his Motion to Suppress, Mr. Garcia asks the Court to suppress evidence obtained pursuant to three search warrants: (1) a search warrant dated April 5, 2024, for Mr. Garcia's person and residence (Gov't Ex. 1, Dkt. No. 32-1); (2) a search warrant dated April 5, 2024, for Mr. Garcia's vehicle (Gov't Ex. 2, Dkt. No. 32-2); and (3) a search warrant dated April 10, 2024, for Mr. Garcia's electronic devices (Gov't Ex. 3, Dkt. No. 32-3).

As set forth below, the Court finds that the first and third search warrant applications were supported by a showing of probable cause in the supporting affidavits and that the officers executing the warrants acted in objectively reasonable reliance on the warrants. The Court therefore recommends that evidence seized as a result of the first and third

1

warrants not be suppressed. The Court additionally finds that the second search warrant—the warrant for Mr. Garcia's vehicle—was not supported by probable cause; however, no evidence was seized from the vehicle, and the Court therefore recommends denying the motion as moot.

**I.    Evidence Seized Pursuant to the April 5, 2024 Warrant for Mr. Garcia's Person and Residence Should Not Be Suppressed.**

Mr. Garcia argues that evidence seized pursuant to the April 5, 2024 search warrant for his person and residence should be suppressed because the supporting affidavit did not provide the dates on which any criminal activity allegedly occurred. (Def.'s Mot. at 6.)

**A.    Stillwater Police Officer Laura McBroom's Supporting Affidavit**

On April 5, 2024, Stillwater Police Officer Laura McBroom applied in state court for a search warrant for Mr. Garcia's person and residence. Officer McBroom was the Juvenile Investigator with the Stillwater Police Department at that time. (Gov't Ex. 1 at 9.)[1] In the sworn affidavit provided in support of the search warrant application, Officer McBroom averred the following information in support of probable cause.

On April 3, 2024, two days before the search warrant was issued, Stillwater Police Officer Jason Belisle took a report from "AP," the mother of "ADP," "AVP," and "BKP." (*Id.*) AP reported that her oldest child, ADP, said she had been sexually assaulted by their caregiver, Mr. Garcia. (*Id.*) AVP, the second oldest daughter, also told her mother that she had been sexually assaulted by Mr. Garcia. (*Id.*)

---

[1] For the United States' exhibits, the Court cites to the page numbers provided by the CM/ECF system.

2

Officer McBroom, along with Washington County Child Protective Services ("CPS"), conducted forensic interviews with ADP, AVP, and BKP. (*Id.*) Officer McBroom has experience in the investigation of sexual assaults against children and is certified by CornerHouse to conduct forensic interviews. (*Id.* at 4, 9.) ADP told Officer McBroom and the CPS employee that Mr. Garcia had digitally penetrated her anus and vagina while she lay on a bed in Mr. Garcia's apartment. (*Id.* at 9.) ADP had observed a camera in the bedroom, as well as other cameras located throughout the apartment. (*Id.*) AVP told Officer McBroom that Mr. Garcia had used a "vibrating toy" under her underwear on several occasions and while doing so had taken pictures and videos of her vaginal area. (*Id.*) AVP said that Mr. Garcia showed her pink, purple, and blue "vibrating toys" located in the middle drawer of a dresser. (*Id.*) AVP also told Officer McBroom she had seen a camera hanging in Mr. Garcia's shower while she was taking a bath with BKP. (*Id.*) BKP was not able to complete the forensic interview for unspecified reasons. (*Id.* at 10.)

Officer McBroom attested that individuals interested in child pornography commonly use computers, cell phones, and other devices, and that collectors of child pornography maintain their collections in digital or electronic formats for years. (*Id.* at 5, 7.) The objects of the warrant included computers and equipment, storage media, cell phones, and personal electronic devices. (*Id.* at 2.)

### B.    Probable Cause

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. "Issuance of a search warrant must be supported by probable cause, which depends on whether, under the totality of the circumstances, there is a fair probability evidence of a crime will be found in a particular place." *United States v. Faulkner,* 826 F.3d 1139, 1144 (8th Cir. 2016); *see* Fed. R. Crim. P. 41. "[P]robable cause is a fluid concept— turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). After a judicial officer has issued a warrant upon a finding of probable cause, that finding normally deserves great deference. *Id*. at 236.

When the issuing judge relies on a supporting affidavit to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (quotation omitted). "The affidavit should be examined under a common sense approach and not in a hypertechnical fashion." *Id*. (quotation omitted) (cleaned up). Therefore, "[w]hen reviewing the issuance of a warrant, [this Court] afford[s] great deference to the issuing judge's probable-cause determination, ensuring only that the judge 'had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing.'" *United States v. Petruk*, 929 F.3d 952, 959 (8th Cir. 2019) (quotation omitted).

Probable cause for a warrant "must exist at the time at which the warrant was issued, not at some earlier time." *United States v. Steeves*, 525 F.2d 33, 37 (8th Cir. 1975). "[T]here

4

is no formula for determining when information has become stale." *United States v. Horn*, 187 F.3d 781, 786 (8th Cir. 1999). "Time factors must be examined in the context of a specific case and the nature of the crime under investigation." *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993). A lapse in time is less consequential "when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." *Horn*, 187 F.3d at 786.

The production and possession of child pornography are criminal activities that are continuing in nature. *See United States v. Lemon*, 590 F.3d 612, 614–15 (8th Cir. 2010). Moreover, "technological advances have increased the ease with which child pornography may be produced, maintained, or distributed—making it all the more likely that the contraband will be retained." *Id.* at 615. In addition, Eighth Circuit "precedent recognizes 'the compulsive nature of the crime of possession of child pornography and the well-established hoarding habits of child pornography collectors.'" *United States v. Espinoza*, 9 F.4th 633, 636 (8th Cir. 2021) (quoting *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016)).

Mr. Garcia argues that evidence seized pursuant to the April 5, 2024 warrant for his person and residence should be suppressed because the supporting affidavit did not include the dates of the alleged criminal conduct. He contends the issue is not mere staleness; rather, he contends that "when a supporting affidavit fails to make *any* averments as to time and dates, the resulting search warrant is invalid." (Def.'s Mot. at 7) (emphasis added). The United States does not deny that the dates or timeframes of the alleged assaults are not included in the affidavit. The United States contends, however, that the detailed, firsthand

information provided by ADP and AVP can be a sufficient foundation for probable cause. (*Id.* at 8, 10.) Further, the United States submits, probable cause may exist, absent dates, given the presumption that producers and possessors of child pornography often keep the contraband for years. (*Id.* at 9–10.)

The lack of dates in a supporting affidavit can be problematic to probable cause. *See United States v. Button*, 653 F.2d 319, 324–25 (8th Cir. 1981). The object of the search warrant in *Button* was the drug PCP, which could be concealed or moved easily. *Id.* at 325. Considering the nature of the property sought and the lack of dates in the affidavit, the *Button* court found there was not probable cause to believe PCP was in the subject residence when the warrant was issued. *Id.*

The items sought in the April 5 warrant, by contrast, were computers, cell phones, and other electronic devices on which child pornography could be located. In *United States v. Summage*, the Eighth Circuit assessed for probable cause a supporting affidavit that did not include the date of the alleged criminal act—a videotaped and photographed sexual encounter. 481 F.3d 1075, 1078 (8th Cir. 2007). The court acknowledged that "[t]he date of the occurrence of the facts relied upon in an affidavit is of importance in the determination of probable cause because untimely information may be deemed stale." *Id.* However, considering the nature of the criminal activity under investigation and the context of the case, the court concluded "that it could be presumed that Summage would maintain in his possession the video and photographs that he made of the sexual encounter . . . . Thus, the affidavit's failure to include the date of that encounter is not fatal to a determination that probable cause existed . . . ." *Id.*

6

Examining Officer McBroom's supporting affidavit in a common-sense and realistic fashion, the Court finds that the affidavit established a fair probability that a search of Mr. Garcia's apartment would result in the discovery of child pornography—even without the dates of the alleged sexual assaults. The affidavit recounted ADP's and AVP's detailed descriptions of the alleged sexual assaults and of Mr. Garcia's apartment. ADP said that Mr. Garcia digitally penetrated her anus and vagina while she lay on a bed in his apartment. AVP said that Mr. Garcia had placed a "vibrating toy" in her underwear several times and had taken pictures and videos of the incidents. AVP also said that Mr. Garcia showed her pink, purple, and blue "vibrating toys" in the middle drawer of a dresser. AVP saw a camera hanging in Mr. Garcia's shower, and ADP saw cameras in the bedroom and throughout the apartment. The richness of the details provided about the assaults, the devices, the cameras, and Mr. Garcia's apartment support the recency of the information. The recollection of such details would not be consistent with the passage of time.

In addition, it is common sense that a mother would report sexual assaults to the police soon after her children told her of them. It is also common sense that ADP and AVP would have told their mother about the assaults soon after they occurred. "Judges are supposed to use common sense in assessing whether probable cause exists at the time that a warrant is sought." *United States v. Manning*, 361 F. Supp. 3d 839, 846 (D. Minn. 2019), *aff'd*, 833 F. App'x 43, 2021 WL 79813 (8th Cir. 2021). Here, common sense indicates that the information in the affidavit was not stale.

The nature of the crimes under investigation also supports a finding of probable cause. ADP said she saw cameras in Mr. Garcia's bedroom and throughout his apartment;

AVP said that Mr. Garcia took photographs and videos of the alleged sexual assaults; and AVP saw a camera in Mr. Garcia's shower when she was taking a bath with BKP. Officer McBroom attested that individuals interested in child pornography commonly use computers, cell phones, and other electronic devices, and that collectors of child pornography maintain their collections in digital or electronic formats for years. The Court may, and does, presume that Mr. Garcia would maintain in his possession the alleged photographs and videos he made of the sexual assaults. The production and possession of child pornography are criminal activities that are continuing in nature, and the contraband is not likely to be destroyed.

In sum, probable cause existed for the April 5 search warrant for Mr. Garcia's residence and person.

### C.    The *Leon* Good-Faith Exception

Even if probable cause did not exist, however, the Court finds that the *Leon* exception applies to the April 5 warrant for Mr. Garcia's residence and person. In *United States v. Leon*, the Supreme Court held that the exclusionary rule did not apply when the police obtain evidence by acting in "objectively reasonable reliance" on a search warrant. 468 U.S. 897, 922 (1984); *see also Herring v. United States*, 555 U.S. 135, 142 (2009). The purpose of the exclusionary rule is to deter police misconduct, and where the police have relied, not on their own assessment of the evidence, but on the probable cause determination of a neutral and disinterested judge, there is no police misconduct, and thus, nothing that can be deterred through application of the exclusionary rule. *Herring*, 555 U.S.

at 142; *Leon*, 468 U.S. at 916. The *Leon* good-faith exception does not apply in the following four scenarios:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702–03 (8th Cir. 2017) (quoting *Leon*, 468 U.S. at 923) (cleaned up).

Here, the supporting affidavit did not contain a false statement that was made knowingly and intentionally or with reckless disregard for the truth. There is no indication that the issuing judge abandoned her judicial role, nor was the affidavit so deficient in probable cause that belief in its existence was utterly unreasonable. Finally, the face of the warrant was not deficient. Consequently, the exclusionary rule does not apply to evidence seized pursuant to the April 5 warrant for Mr. Garcia's residence and person.

Accordingly, the Court recommends denying Mr. Garcia's motion to suppress evidence gained through the April 5, 2024 search warrant for Mr. Garcia's person and residence.

## II.    The Motion to Suppress Evidence Seized Pursuant to the April 5, 2024 Search Warrant for Mr. Garcia's Vehicle Should Be Denied as Moot.

On the same day Officer McBroom applied for a search warrant for Mr. Garcia's home and person, she applied for a search warrant for his vehicle. Mr. Garcia argues that evidence seized pursuant to the April 5, 2024 warrant for his vehicle should be suppressed

9

for the same reason as the warrant for his residence and person—because the supporting affidavit did not include the specific dates and times the alleged criminal conduct occurred. (Def.'s Mot. at 9.) Based on the discussion in Part I, the Court does not recommend suppression on that basis.

Mr. Garcia also argues there is no nexus between his vehicle and criminal activity. (*Id.*) The supporting affidavit for the vehicle warrant contained the same information as the affidavit for Mr. Garcia's residence and person, plus the additional information that Mr. Garcia drove a 2014 Jaguar bearing the Minnesota license plate EFA-xxx, that his apartment property manager had confirmed that Mr. Garcia drove his car to and from his residence daily, and that the Jaguar was registered to Mr. Garcia. (Gov't Ex. 2 at 4, Dkt. No. 32-2.)

The United States responds that the object of the warrant included "Biological evidence as it pertains to sexual activity," which could include hair, sweat, and other biological materials contained in the Jaguar that could link Mr. Garcia to the alleged sexual assaults. (Gov't's Resp. at 14.) Similarly, electronic devices were also objects of the warrant, and the United States contends it would be reasonable to believe that Mr. Garcia might have left an electronic device such as a phone or computer in his car. (*Id.* at 15.) Moreover, the United States points out, it would be reasonable to infer from Mr. Garcia's apartment property manager's statement that Mr. Garcia had used his car recently. (*Id.*)

"[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). In this case, the warrant affidavit simply sets out no nexus whatsoever

between the contraband and Mr. Garcia's Jaguar. The claim that "biological evidence as it pertains to sexual activity" might be in the car is not supported by any evidence that sexual activity took place in the car, or that any biological evidence was transferred from the house, where sexual activity did take place, to the car.

In any event, the receipt, inventory, and return for the car shows that nothing was seized from it. (Gov't Ex. 1 at 20.) Accordingly, there is no evidence to suppress, and the Court recommends that this aspect of the Motion to Suppress be denied as moot.

## III. Evidence Seized Pursuant to the April 10, 2024 Warrant for Mr. Garcia's Electronic Devices Should Not Be Suppressed.

Mr. Garcia argues that evidence seized pursuant to the April 10, 2024 warrant for 17 electronic devices should be suppressed as fruit of the poisonous tree. The Court has concluded, however, that evidence seized pursuant to the search warrant for Mr. Garcia's residence and person should not be suppressed, and no evidence was seized from the search of Mr. Garcia's vehicle. (Gov't Ex. 1 at 20.) Thus, the Court does not recommend suppression on this basis.

Mr. Garcia also argues there is no nexus between the crimes under investigation and "every single electronic device that might be present in [his] home, vehicle[,] and work computer bag." (Def.'s Mot. at 11.) He suggests the nexus is too "vague" or "generalized," in light of the "sparse information provided by" ADP and AVP. (*Id.*)

The United States responds that the nexus was created by the discovery of cameras in Mr. Garcia's apartment during the April 5 search and by the "intuitive relationship between acts such as child molestation or enticement and possession of child pornography."

11

(Gov't Resp. at 15–16 (quoting *United States v. Colbert*, 605 F.3d 573, 578 (8th Cir. 2010).)

### A.    Stillwater Police Officer David Wulfing's Supporting Affidavit

Stillwater Police Officer David Wulfing provided the affidavit in support of the April 10, 2024 search warrant for electronic devices. Officer Wulfing's affidavit began with the same information included in Officer McBroom's first affidavit. (*See* Gov't Ex. 3 at 3–4.) In addition, Officer Wulfing stated that multiple electronic devices had been seized from Mr. Garcia's apartment on April 5, 2024, including "multiple cameras located both overtly and covertly in the apartment." (*Id.* at 4.) Through his extensive training in digital forensic examination, Officer Wulfing knew that collectors and producers of child sex abuse material use digital media to record and save images and videos of their crimes. (*Id.*) In addition, many people involved in producing child sex abuse material keep their collections and consider them personally valuable. (*Id.*) They use computers most of the time. (*Id.* at 4–5.)

On April 10, 2024, Mr. Garcia's employer, the Lowell Inn, called Officer McBroom and reported that Mr. Garcia had left his computer bag at work after he was arrested there earlier that day. (*Id.* at 5.) The bag was turned over to the police. (*Id.*) Officer Wulfing believed that evidence of the crimes under investigation (criminal sexual conduct and production of child sex abuse material) would be located on the electronic devices. (*Id.*)

The objects of the warrant included Mr. Garcia's computer bag, electronic items located within the bag, and a list of computer components, cell phones, tablets, and other devices. (*Id.* at 2–3.) The objects were seized during the search of Mr. Garcia's person,

seized from Mr. Garcia during his arrest, or obtained from his workplace after his arrest. (*Id.*)

**B.    Probable Cause**

The Court finds that Officer Wulfing's affidavit provided a nexus between criminal activity and the objects of the warrant. ADP reported that Mr. Garcia had sexually assaulted her in the bedroom of his apartment and she had seen a camera in that room as well as several other cameras elsewhere in the residence. AVP reported that Mr. Garcia had used a "vibrating toy" under her underwear on several occasions and had taken pictures and videos of the encounters. AVP also said she saw a camera hanging in Mr. Garcia's shower when she was taking a bath with BKP. In the overall context of this case, there is no reason for cameras to be in a bathroom where minors are bathing other than to acquire intimate images of those minors while they are unclothed. Cameras positioned to obtain intimate images, coupled with acts of child sexual abuse such as those described in the forensic interviews of ADP and AVP, leads to the conclusion that child pornography will be found in the residence, and on electronics in that residence. Accordingly, the Court finds there was a specific nexus between cameras and recording devices in Mr. Garcia's apartment and the suspected criminal activity of criminal sexual conduct and production of child sex abuse material.

To the extent Mr. Garcia argues that the nexus did not extend to *all* of his electronic devices and storage media, the potential for overbreadth "must be assessed in terms of practicality." *See Summage*, 481 F.3d at 1079. In *Summage*, a warrant authorized a search of a wide range of storage media and recording devices, even though the officers who

13

applied for the warrant "knew only that a video and photographs of the alleged incident supposedly existed." *Id.* "As a practical matter, it is frequently difficult, and often times more intrusive to an individual's privacy, to perform an on-site review of certain items." *Id.* Searching computers and devices on-site could take days. *See id.* (citations omitted). "Because no indication was given regarding the nature of the format in which the sought-for video and photographs were created or stored, it was necessary to search a broad array of items for the relevant materials, the on-site search of which could take a significant amount of time." *Id.* "Given these circumstances and the practical concerns associated therewith," the *Summage* court concluded that the warrant was not overbroad or lacking in particularity. *Id.*

Similarly, here, there was no way for investigators to know on which electronic devices or storage media the videos and photographs of the alleged sexual assaults were stored. Contrary to Mr. Garcia's argument, the information provided by ADP and AVP was not sparse. ADP reported seeing several cameras in the apartment, including one in the bedroom, where she was allegedly sexually assaulted. AVP reported that Mr. Garcia took pictures or videoed several sexual assaults and showed her the pictures or videos. AVP also saw a camera in the bathroom when she took a bath with BKP. Given the circumstances, the warrant was not overbroad or lacking in particularity, and the seizure and search of all Mr. Garcia's electronic devices and storage media was not unreasonable.

### C.    The *Leon* Good-Faith Exception

Even if probable cause did not exist, the Court finds that the *Leon* exception applies to the April 10 warrant. The supporting affidavit did not contain a false statement that was

made knowingly and intentionally or with reckless disregard for the truth. Nothing indicates that the issuing judge abandoned her judicial role, and the affidavit was not so deficient in probable cause that belief in its existence was utterly unreasonable. Nor was the face of the warrant deficient. Consequently, the exclusionary rule does not apply to evidence seized pursuant to the April 10 warrant, and Mr. Garcia's motion to suppress evidence seized pursuant to the April 10 warrant should be denied.

Accordingly, **IT IS HEREBY RECOMMENDED** that Alejandro Rojas Garcia's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. No. 30) be **DENIED** as to the search warrant dated April 5, 2024, for Mr. Garcia's person and residence (Gov't Ex. 1, Dkt. No. 32-1); **DENIED AS MOOT** as to the search warrant dated April 5, 2024, for Mr. Garcia's vehicle (Gov't Ex. 2, Dkt. No. 32-2); and **DENIED** as to the search warrant dated April 10, 2024, for Mr. Garcia's electronic devices (Gov't Ex. 3, Dkt. No. 32-3).

Date:  August 7, 2025                    *s/ John F. Docherty*
                                         JOHN F. DOCHERTY
                                         United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of

15

Appeals. Under LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).