UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO ROJAS GARCIA,<br><br>Defendant. | Case No. 25-98 (JRT/JFD)<br><br>MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION |

---

William C. Mattessich, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Lee R. Johnson, **JOHNSON & GREENBERG, PLLP**, 5775 Wayzata Boulevard, St. Louis Park, MN 55416, for Defendant.

Defendant Alejandro Rojas Garcia ("Defendant" or "Garcia") faces one count of Attempted Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and 2251(e) and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4) and 2252(b).  Garcia moved to suppress evidence obtained pursuant to three search warrants, arguing that the search warrants were not supported by probable cause and that the good-faith exception to the exclusionary rule did not apply.  Magistrate Judge John F. Docherty issued a Report and Recommendation ("R. & R."), recommending that the Court deny Garcia's motion.  Garcia timely objected to the R. & R.  Upon de novo review, the Court will overrule Garcia's objections, adopt the Magistrate Judge's R. & R.,

and deny Garcia's Motion to Suppress because the warrants were supported by probable cause and the good-faith exception to the exclusionary rule applies.

## BACKGROUND

### I. FACTS

Garcia's motion to suppress involved evidence collected pursuant to three search warrants. The first and second warrants were issued by Washington County District Court Judge Helen R. Brosnahan on April 5, 2024. (Gov't Ex. 1 at 12–14, July 15, 2025, Docket No. 32; Gov't Ex. 2 at 6–8.)[1] Officer McBroom of Stillwater Police Department, who was the Juvenile Investigator at the time, provided affidavits in support of both warrant applications. (Gov't Ex. 1 at 2–11; Gov't Ex. 2 at 2–5.)

The purpose of the first warrant was to search Garcia's person and residence and seize evidence related to child pornography. (Gov't Ex. 1 at 12–14.) The affidavit supporting the warrant explained that on April 3, 2024, Stillwater Police Officer Jason Belisle took a report from "AP," the mother of "ADP," "AVP," and "BKP." (Gov't Ex. 1 at 9.) AP reported that her oldest child, ADP, and her second oldest daughter, AVP, told AP that they had been assaulted by their "caregiver" and "long-time family friend," Garcia. (*Id.*) Officer McBroom, with the assistance of Washington County Child Protective Services, conducted forensic interviews with ADP, AVP, and BKP. (*Id.*) During the forensic

---

[1] The Court cites to the CM/ECF pagination.

interview, ADP disclosed that Garcia "digitally penetrated . . . her anus and vagina while laying on a bed inside" Garcia's residence. (*Id*.) ADP observed several cameras placed throughout Garcia's apartment, including one in the bedroom where the assault had taken place. (*Id*.)

During AVP's interview, she alleged that her assaults occurred on the couch and bed inside Garcia's apartment. (*Id*.) AVP disclosed that Garcia had used a vibrating toy under her pants and on top of her vagina on several occasions. (*Id*.) She described that Garcia used one hand to hold the vibrating toy while using the other hand to take pictures and/or record her vaginal area. (*Id*.) AVP said that Garcia would show her the pictures and/or videos. (*Id*.) AVP described multiple pink, purple, and blue vibrating toys that were stored in the middle drawer of a nightstand and noted that Garcia had shown these to her. (*Id*.) AVP also disclosed that she had observed a camera in the shower, specifically in a shower hanger, while taking a bath with BKP. (*Id*.)

Officer McBroom attested that individuals interested in child pornography commonly use computers, cell phones, and other devices; that child pornography collectors maintain their collections in digital or electronic formats for several years; and that collectors often keep their collections nearby—typically at their residence—to allow for convenient viewing. (*Id.* at 5, 7.) The first warrant authorized the search of, among other things, Garcia's computer systems, storage media, cell phones, personal electronic

devices, and other items tending to show the possession or distribution of child pornography. (*Id.*)

The purpose of the second warrant was to search Garcia's vehicle and seize evidence related to child pornography. (Gov't Ex. 2 at 6.) The supporting affidavit restated largely the same facts as the first warrant request. (*Compare* Gov't Ex. 2 at 3–4, *with* Gov't Ex. 1 at 9–10.) Nothing was seized from the search of Garcia's vehicle. (Gov't Ex. 1 at 20.)

Judge Brosnahan issued the third search warrant on April 10, 2024. (Gov't Ex. 3 at 7–11.) The purpose of the warrant was to forensically search and examine the digital devices and electronics seized in the execution of the April 5 warrant of Garcia's person and residence. (*Id.* at 2–3.) The warrant application also sought authorization to search a bag obtained from Garcia's workplace after his arrest. (*Id.* at 5.) Officer Wulfing of Stillwater Police Department provided the affidavit in support of the search warrant. (*Id.* at 2.) Again, the supporting affidavit included the facts stated in Officer McBroom's first affidavit. (*Id.* at 3–4.) The affidavit also detailed numerous electronic devices and storage media that were seized from Garcia's residence on April 5, 2024, including "multiple cameras located both overtly and covertly in the apartment." (*Id.* at 4.) The affidavit explained that on April 10, 2024, Garcia's employer contacted Officer McBroom and reported that Garcia had left a laptop bag at work the day he was arrested. (*Id.* at 5.) The bag was turned over to the police. (*Id.*) Officer Wulfing stated that the bag appear[ed]

to contain an object consistent with a laptop computer. (*Id.*) Officer Wulfing also opined that given his "extensive training in digital forensic examination," producers and collectors of child pornography "use digital media to record and save images and videos of their crimes." (*Id.* at 4.)

Finding probable cause, Judge Brosnahan issued a warrant authorizing a physical and forensic search of the laptop bag provided by Garcia's employer, the items seized during the April 5, 2024 search, and the items obtained at the time of Garcia's arrest.

## II.   PROCEDURAL HISTORY

Garcia was indicted on one count of Attempted Production of Child Pornography and one count of Possession of Child Pornography on March 20, 2025. (Indictment, March 20, 2025, Docket No. 13.)  Garcia moved to suppress evidence obtained pursuant the three search warrants: (1) one dated April 5, 2024, for Garcia's person and residence, (Gov't Ex. 1); (2) one dated April 5, 2024, for Mr. Garcia's vehicle, (Gov't Ex. 2); and (3) one dated April 10, 2024, for Mr. Garcia's electronic devices that were seized during the April 5 search and for the laptop bag that Garcia's employer turned over to the police, (Gov't Ex. 3). (Motion to Suppress, June 30, 2025, Docket No. 30.) Garcia's Motion to Suppress contended that all evidence discovered during the searches conducted under the first, second, and third search warrants should be suppressed for lack of probable cause and because the good-faith exception did not apply. (*Id.*)

The Magistrate Judge issued a Report and Recommendation, recommending the Court deny Garcia's motion. (R. & R. at 15, August 7, 2025, Docket No. 35.) As to the first

and third search warrants, the Magistrate Judge concluded that probable cause existed, and that, even if there was no probable cause, the good-faith exception delineated in *United States v. Leon*, 468 U.S. 897 (1984) applied and that the evidence should not be suppressed. (*Id.* at 8–9, 13–15.) As to the second search warrant relating to the search of Garcia's vehicle, the Magistrate Judge determined that probable cause did not exist, but because no evidence was seized from this search, the Magistrate Judge recommended denying the motion as moot.[2] Garcia timely objected to the R. & R. (Def.'s Objs. to R. & R. ("Def.'s Objs."), August 21, 2025, Docket No. 36.)

**DISCUSSION**

**I.   STANDARD OF REVIEW**

After a magistrate judge issues an R. & R., "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations." D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07–1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews de novo "properly objected to"

---

[2] Defendant does not object to the Magistrate Judge's conclusion regarding the second search warrant, and the Court concludes that Magistrate Judge did not err in denying Garcia's motion to suppress—regarding the second warrant for the search of Garcia's vehicle—as moot because no evidence was seized from his vehicle.

-6-

portions of an R. & R.³  D. Minn. LR 72.2(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(c).

## II.   ANALYSIS

Because Garcia's motion to suppress is dispositive, the Court will review the Magistrate Judge's determinations de novo.  *See* D. Minn. LR 72.1(a)(3)(A).  Garcia raises three objections.  First, he argues that the April 5, 2024 search warrant was not supported by probable cause because the supporting affidavit does not support the inference that the children immediately informed their mother of the alleged abuse.  Second, he asserts that the supporting affidavit for the April 10, 2024 warrant failed to establish sufficient nexus between the alleged criminal activity and the objects of the warrant.  Third, he asserts that good-faith exception does not apply.  The Court will address the first two objections together, and then the Court will address the applicability of the good-faith exception.

### A.   Probable Cause

The Fourth Amendment requires that a search warrant be issued only if it is supported by probable cause.  U.S. Const. amend. IV.  In determining whether probable

---

³ In the civil context, "[o]bjections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error."  *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).  It is unclear whether this rule applies in the criminal context.  *See United States v. Chopra*, No. 19-305, 2021 WL 347415, at *1 (D. Minn. Feb. 2, 2021).  Because the Eighth Circuit has not weighed in on the proper standard of review and because Garcia's motion to suppress fails under either standard, the Court will review the R. & R. de novo.

cause exists, the search warrant must demonstrate that given all the circumstances set forth in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This requires the issuing judge to look at the totality of the circumstances. *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998). When a search warrant is based solely on an affidavit, courts may consider only "information which is found within the four corners of the affidavit" to determine the existence of probable cause. *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citation omitted). "The affidavit 'should be examined under a common sense approach and not in a hypertechnical fashion.'" *Id.* (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). Although the Court reviews the R. & R. de novo, the Court must afford "great deference" to the probable cause finding of the judge who issued the warrant. *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010) (citing *Gates*, 462 U.S. at 236). The Court must uphold the probable cause determination if the issuing judge had a substantial basis for the initial probable cause finding. *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999).

### 1. The April 5, 2024 Search Warrant

Garcia argues that the evidence discovered during April 5 search of his person and residence should be suppressed because the supporting affidavit lacks specific dates of on which the alleged abuse occurred, and that the supporting affidavit does not support the conclusion that the children informed their mother of the alleged assaults immediately after they occurred. (Def.'s Objs. at 1–3.)

-8-

It is well-established that "probable cause must exist at the time of the search and not merely at some earlier time." *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005). "The date of the occurrence of the facts relied upon in an affidavit is of importance in the determination of probable cause because untimely information may be deemed stale." *Id.* Although "[t]here is no bright-line test for determining when information is stale," the Court must consider time factors "in the context of the specific case and the nature of the crime under investigation." *Id*. (quoting *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)).

While the lack of specific dates in the supporting affidavit raises concerns, it does not categorically bar a probable cause finding. *See United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007). The Court finds that the April 5 search warrant was supported by probable cause for two reasons.

First, the alleged criminal activity—the production and possession of child pornography—is continuing in nature, and therefore, the Court may presume that Garcia maintained possession of the child sex abuse material even though the affidavit did not state exactly when the children told their mother of the alleged assaults. *See id.* (concluding that "the affidavit's failure to include the date of that [sexual] encounter is not fatal to a" probable cause determination because "it could be presumed that [the defendant] would maintain in his possession the video and photographs that he made of the sexual encounter").

-9-

Here, Officer McBroom's supporting affidavit averred that "[c]ollectors of child pornography often maintain their collections, in a digital or electronic format, in a safe, secure, and private environment . . . ." (Gov't Ex. 1 at 7.)  Officer McBroom's statement aligns with Eighth Circuit case law, which "recognizes 'the compulsive nature of the crime of possession of child pornography and the well-established hoarding habits of child pornography collectors.'"  *United States v. Espinoza*, 9 F.4th 633, 636 (8th Cir. 2021) (quoting *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016)).  Because Eighth Circuit precedent and Officer McBroom's statement support the conclusion this kind of material was unlikely to be destroyed, there was a fair probability that evidence of criminal activity would be found at Garcia's residence.[4]  The fact that Officer McBroom's affidavit did not disclose when the children reported the alleged assaults to their mother does not overcome a probable cause finding.

Second, the affidavit contained extensive details of the alleged criminal activity, such that a reasonable person could believe that there was a fair probability that evidence of criminal activity would be found in Garcia's residence. *See Gates*, 462 U.S. at 238.  To collect these details, the police conducted forensic interviews with ADP and AVP.  The affidavit described ADP and AVP's alleged assaults in Garcia's residence.  ADP stated that

---

[4] Courts have distinguished child pornography-related crimes from other kinds of crimes, such as drug possession, noting that a person's prior possession of drugs may not establish probable cause to believe that such person currently possesses drugs because drugs are typically consumed or sold quickly, unlike child pornography, which is often retained.  *See, e.g.*, *United States v. Manning*, 361 F. Supp. 3d 839, 846 (D. Minn. 2019).

Garcia "digitally penetrated . . . her anus and vagina while laying on a bed inside of" Garcia's residence. (Gov't Ex. 1 at 9.) ADP reported observing multiple cameras located throughout Garcia's apartment, including one in the bedroom where the assault had taken place. AVP also detailed her assaults, which occurred on the couch and bed inside Garcia's apartment. She disclosed that Garcia had used a vibrating toy under her pants and on top of her vagina on several occasions. She explained that Garcia used one hand to hold the vibrating toy while using the other hand to take pictures and record her vaginal area. AVP stated that Garcia would then show her the pictures and videos. AVP described multiple pink, purple, and blue vibrating toys that were stored in the middle drawer of a nightstand and noted that Garcia had shown these to her. AVP also disclosed that she had observed a camera in the shower, specifically in a shower hanger, while taking a bath with BKP. The detail of these reports support the conclusion that assaults occurred recently and that there was a fair probability that evidence of criminal activity would be found at Garcia's residence. *Cf. United States v. Jackson*, 898 F.2d 79, 81 (8th Cir. 1990) (noting that the "richness and detail of a first hand observation" indicate reliability of information provided by criminal informant).

    For these reasons, the Court finds that Judge Brosnahan had a substantial basis for finding that Officer McBroom's affidavit established probable cause to search Garcia's person and residence.

### 2. The April 10, 2024 Search Warrant

Garcia argues that the Magistrate Judge erred in determining that the April 10, 2024 search warrant affidavit established a sufficient nexus between the alleged criminal activity and all of Garcia's electronic devices and storage media in his home. (Def.'s Objs. at 3.)

"[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). Courts "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant." *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000).

The Magistrate Judge concluded that Officer Wulfing's supporting affidavit established a nexus between the alleged criminal activity and all of Garcia's electronic devices and storage media. (R. & R. at 13–14.) The Magistrate Judge reasoned that the search was reasonable because "there was no way for investigators to know on which electronic devices or storage media the videos and photographs of the alleged sexual assaults were stored." (*Id.* at 14.) The Magistrate Judge also noted that ADP's and AVP's reports were "not sparse" with details. (*Id.*) Specifically, ADP reported seeing numerous cameras in Garcia's residence, including one in the bedroom where ADP was allegedly assaulted. (*Id.*) AVP disclosed that Garcia photographed or recorded several sexual assaults and that he would show her the captured material. (*Id.*) AVP also reported that she observed a camera in the bathroom during her bath with BKP. (*Id.*)

Garcia argues that the Magistrate Judge's conclusion is flawed because even if the children reported the alleged filming of the sexual assaults just before the police executed the search warrant, it is unreasonable to infer that Garcia had the time or inclination to transfer the recorded material to other devices in his home. (Def.'s Objs. at 4.) Instead, Garcia argues that, at best, the police had probable cause to search only certain items: (1) a phone or recording device that could be held in Garcia's hand; (2) hidden cameras or cameras located in rooms where alleged assaults took place; and (3) the camera ADP described as being in "shower hanger." (*Id.*) Garcia's view is overly narrow.

Similar to Officer McBroom's April 5 affidavit, Officer Wulfing's affidavit began by detailing the alleged assaults, which identified certain electronic devices that Garcia utilized (i.e., multiple cameras and a hand-held device capable of taking pictures and recording videos). (Gov't Ex. 3 at 3–4.) Officer Wulfing's affidavit then stated that police found "multiple cameras located both overtly and covertly in the apartment" when police executed the April 5 search warrant, thereby partially corroborating AP's report to the police. (*Id.* at 4.) The affidavit also explained that those interested in child pornography generally keep collections of their material in digital format.[5] (*Id.*) Taken together, it is reasonable to infer that the images and videos captured by the cameras would be stored

---

[5] (*Id.* (averring that based on "training and experience, . . . many collectors and producers of Child Sex Abuse Material (Child Pornography) use digital media to record and save images and videos of their crimes," and that "many people involved in Child Sex Abuse Material production and sharing keep collections o[f] their media and consider them personally valuable")).

not only on the cameras themselves, but also on other devices, including computers, tablets, cell phones, and data storage devices—because images and videos can be easily transferred (and sometimes automatically) to other devices. *See United States v. Bourgeois*, No. 10-25, 2010 WL 3613822, at *6 n.3 (D. Minn. Sept. 7, 2010) (noting that "[e]lectronic images are easily transferred from one device to another").

This inference is supported by the Eighth Circuit's decision in *Summage*, 481 F.3d at 1075. In that case, the warrant authorized the search and seizure of various media, recording devices, and related equipment, despite the officers only knowing "that a video and photographs of the alleged incident supposedly existed, not the particular format in which these items were being kept." *Id.* at 1079. The Eighth Circuit concluded that the warrant was neither overbroad nor lacked particularity. *Id.* at 1080. In doing so, the court acknowledged that "[a]s a practical matter, it is frequently difficult, and often times more intrusive into an individual's privacy, to perform an on-site review of certain items," and as a result, "[a]n off-site analysis of relevant materials is therefore often necessary." *Id.* at 1079. The court then concluded that "[b]ecause no indication was given regarding the nature of the format in which the sought-for video and photographs were created and stored, it was necessary to search a broad array of items for the relevant materials" since "the on-site search . . . could take a significant amount of time." *Id.* at 1079–80. The same is true here. It would have been impractical for the police to limit the scope of their search to (1) a hand-held device capable of taking photos and videos; (2) "cameras hidden

or otherwise operating in rooms where the children allege the sexual assaults occurred"; and (3) the camera located in the "shower hanger" because the police had no way of ascertaining where alleged child sex abuse material was being stored, especially given how easily files can be moved or automatically transferred to other devices. (*See* Def.'s Objs. at 4.)

In light of Officer Wulfing's affidavit, reasonable inferences drawn from such affidavit, and common sense, the Court finds that it is reasonable to conclude based on the totality of the circumstances that probable cause existed for the April 10, 2024 search warrant for Garcia's computer bag and its contents, which was turned over to police by Garcia's employer, as well as about twenty electronic devices and storage media police found during the April 5, 2024 search of his home. *See Solomon*, 432 F.3d at 827 (emphasizing that the affidavit must "examined under a common sense approach"). Accordingly, the Court finds that Judge Brosnahan had a substantial basis for finding that Officer Wulfing's affidavit established probable cause and a sufficient nexus between the alleged criminal activity and the objects of the warrant.

### B.   *Leon* Good-Faith Exception

After the Magistrate Judge concluded that the first and third search warrants were supported by probable cause, the Magistrate Judge also determined that the *Leon* good-faith exception to the exclusionary rule applied to both warrants. (R. & R. at 8–9, 14–15.) Garcia objects, arguing that the good-faith exception does not apply because any reasonably well-trained officer would know that dates and times, as well as a nexus

between illegal activity and the locations to be searched, are required in the search warrant application. (Def.'s Objs. at 5.) Although the first and third search warrant applications established probable cause and a sufficient nexus, the Court nonetheless finds that the evidence would be admissible because the officers acted in objectively reasonable reliance and in good faith on the validity of the warrant. *See Leon*, 468 U.S. at 922–23.

Although the ordinary sanction for searches conducted without probable cause is suppression of the evidence recovered in the illegal search, this exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (quoting *Leon*, 468 U.S. at 920). The *Leon* good-faith exception does not apply in four circumstances:

> (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that the executing officer could not reasonably presume the warrant to be valid.

*United States v. Grant*, 490 F.3d 627, 632–33 (8th Cir. 2007) (citations and quotations marks omitted).

None of these circumstances apply here. There is no suggestion that Officer McBroom's and Officer Wulfing's affidavits contained any false statements, much less statements that were knowingly and recklessly false. Nor is there any suggestion that Judge Brosnahan abandoned her judicial role. The Court also does not conclude that the warrant lacked indicia of probable cause such that officers' belief in the existence of probable cause was unreasonable, especially considering that one state court judge, a Magistrate Judge, and the Court have determined that the first and third warrants were supported by probable cause. Finally, the warrant was not facially deficient because it described the places to be searched and the things to be seized. *See Leon*, 468 U.S. at 923 ("[D]epending on the circumstances of the particular case, a warrant may be so facially deficient—i.e, in failing to particularize the place to be searched or things to be seized— that the executing officers cannot reasonably presume it to be valid."). Contrary to Garcia's contention, a warrant is not facially deficient merely because the affidavit omits specific dates and times of the alleged criminal activity, as the issuing judge may consider the ongoing nature of the offense.[6]

Therefore, even if probable cause did not exist, the Court finds that the good-faith exception under *Leon* applies to both the April 5, 2024 warrant for Garcia's person and

---

[6] *See Manning*, 361 F. Supp. 3d at 846–47 ("[T]he Eighth Circuit has upheld search warrants for child pornography based on supporting affidavits containing **no dates whatsoever** when it was reasonable to conclude that evidence would be discovered because of the suspect's demonstrated interest in child pornography.").

residence and the April 10, 2024 warrant for Garcia's computer bag, electronic devices, and storage media. Accordingly, the Court will deny Garcia's motion to suppress.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Alejandro Rojas Garcia's objections to the Report and Recommendation [Docket No. 36] are **OVERRULED**;

2. The Report and Recommendation [Docket No. 35] is **ADOPTED**; and

3. Defendant Alejandro Rojas Garcia's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 30] is **DENIED**.

DATED: October 21, 2025  
at Minneapolis, Minnesota.

JOHN R. TUNHEIM  
United States District Judge